UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAHGEAM JENKINS, | : |
| Plaintiff, | : Civ. No. 22-6482 (KM) (CLW) |
| v. | : |
| | : **OPINION** |
| GERVOSO CORDOVA, at al., | : |
| Defendants. | : |

**KEVIN MCNULTY, U.S.D.J.**

Plaintiff Rahgeam Jenkins, formerly an inmate in the New Jersey state prison system,[1] seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 against several correctional officers and prison officials for allegedly failing to protect him from an assault by another inmate. In a previous order (ECF No. 6), I granted Jenkins leave to proceed *in forma pauperis*, and noted that the complaint would be screened in due course pursuant to 28 U.S.C. § 1915A. Upon having

---

[1] The events underlying this lawsuit occurred when Jenkins was an inmate at North Jersey State Prison in Newark, New Jersey. DE 1 ¶ 1. Jenkins was housed at East Jersey State Prison in Rahway, New Jersey, when he filed the complaint. DE 1 at 13. In early April 2023, he informed the Court that he was at that point housed in a residential treatment facility in Newark. DE 7. In mid-April, he sent a subsequent letter indicating that he was housed in what appears to be an emergency housing shelter; however, he noted that he was being discharged from that facility and his "next location is unknown." DE 8. Also in that letter, Jenkins states that the conditions in the shelter constitute cruel and unusual punishment due to poor ventilation, inoperative air conditioners, and other residents' cigarette smoke, and he requests a "more suitable residence for my recovery." DE 8. To the extent Jenkins is complaining about conditions in the emergency housing shelter, or seeking to amend his complaint to add new claims or defendants, I will not consider them in this opinion because these allegations are unrelated to the failure-to-protect allegations described in the complaint. *See, e.g.*, *Walker v. New Jersey*, No. 12-1734, 2012 WL 3757085, at *6 (D.N.J. Aug. 28, 2012) ("Unrelated claims against different defendants belong in different suits.") (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)); *Dewald v. Franklin County Jail*, No. 21-1579, 2022 WL 108608, at *2 (M.D. Pa. Jan. 11, 2022) ("Instead of joining unrelated claims, a plaintiff's remedy is to file a separate lawsuit.").

screened the complaint, for the reasons discussed below, the complaint will be dismissed in part and permitted to proceed in part.

A.   **Background**

The complaint contains the following factual allegations, which, for screening purposes, I accept as true.

In July of either 2020 or 2021,[2] Jenkins was transferred from South Woods State Prison to Northern State Prison in Newark, New Jersey. ECF No. 1 ¶ 5. He was assigned to cell number 416. *Id.* His neighbor in cell 417 was named Tyriek Jordan. *Id.* ¶ 17. During the time they were housed next to each other, Jordan had frequent "dramatic outburst[s]," including "screaming at inmates, officers[,] and civilians," "bickering and fighting with his cellmates," and "banging on thin walls . . . without any regard for the time of day or the basic human need for rest." *Id.* ¶ 18. Jordan had "periodic visits from mental health professionals," which Jenkins took to mean that Jordan had "many mental health issues." *Id.*

In October 2020, Jordan was transferred out of Jenkins's housing unit, but he returned less than a month later after having committed an unspecified disciplinary infraction. Defendant Gervoso Cordova, a lieutenant, assigned Jordan to Jenkins's cell "notwithstanding [Jordan's] documented history of mental illness [and] history of violence." *Id.* ¶ 19 & 19 n.2. Jenkins, "aware of the potential for danger," "immediately addressed his concerns to a correctional officer." *Id.* The next day, Jenkins spoke with two officers—identified as defendant Sgt. Luis Rios and nonparty "Officer Bigelow"—and "mentioned Mr. Jordan's addiction and use of the

---

[2] The complaint is inconsistent with dates, at some points stating the events in question occurred in 2020 (*e.g.*, DE 1 ¶¶ 15, 19) and at other points stating 2021 (*e.g.*, *id.* ¶ 16). It appears that Jenkins was attempting to relate the events in chronological order and that the "2021" in paragraph 16 may have been a typographical error.

drug 'K2,'[3] my underlying health condition and the danger it presented." *Id.* Officer Bigelow told Jenkins to "be patient," and Sgt. Rios "failed to respond to [Jenkins's] request." *Id.* Jenkins then "documented his concerns" via email. That email, the text of which is attached to the complaint, largely complained that Jordan had previously been in a unit where inmates were known to be infected with COVID, and alleged that the "prison continues to underestimate how contagious and deadly the virus is." ECF No. 1-3. It also requested officials to "[p]lease investigate this matter so my life isn't put at risk by #1 being housed with an inmate with mental health issues and #2 someone who was possibly infected with a virus." *Id.*

Following this email, an officer named "Sgt. Mack" investigated Jenkins's concerns and asked him to answer various written questions, including whether he thought he was in danger. DE 1 ¶ 19. Jenkins responded "yes" and elaborated "cell mate possible Covid & special needs." Later on the same form, in response to a request for "additional information relevant to your request," Jenkins responded: "concern with being in the same cell w/ someone who has special needs." DE 1-3 at 5. Jenkins alleges that defendant "Lt. Hassan," who had previously investigated one of Jenkins's prior, unrelated grievances, "declined to have [Jenkins] moved away from Mr. Jordan." DE 1 ¶ 20 & 20 n.5.

Five days after Jordan was assigned to Jenkins's cell, he assaulted Jenkins, "despite repeated warnings of danger and serious risk of future harm." DE 1 ¶ 21. The complaint does not provide details of the assault, but alleges that Officer Bigelow (who, again, is not named as a defendant) "witness[ed] the assault . . . and did nothing to prevent it from occurring." DE 1 ¶ 22. Jenkins suffered "numerous head injuries," resulting in severe headaches, and a "fractured bone in his right foot," though he is not sure whether the bone was broken during the assault or while

---

[3] I take judicial notice that "K2" refers to a form of synthetic marijuana known to have "psychoactive properties." *See* https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (last visited May 12, 2023).

he was being transported to the infirmary. *Id.* ¶ 28. Medical records attached to the complaint indicate that Jenkins suffered "facial trauma," including "lacerations to his left forehead and temple," which required suturing and "neurological monitoring," though he had no signs of "TBI"(traumatic brain injury). DE 1-3 at 7. As to the foot, the initial assessment was "unremarkable," finding "likely soft-tissue injury," but a subsequent x-ray indicated a fracture at the base of the fifth metatarsal (i.e., a broken pinky toe). DE 1-3 at 7, 8, 9. In addition, Jenkins alleges that a psychiatrist informed him that he would be designated "vulnerable population status," which would allow him to be held in a cell by himself, but prison officials "violated this designation" and placed him in a cell with another inmate who was "also believed to suffer from mental illness." *Id.* Further, Jenkins generally alleges that the defendants purposely housed him with an inmate known to be violent and dangerous in retaliation for Jenkins having filed previous unrelated grievances. *Id.* ¶ 21.

Jenkins was charged with an institutional infraction of fighting with Jordan, *id.* ¶ 15, which was at first sustained, and he was sanctioned with the loss of benefits including phone and visitation privileges, as well as 100 days in a restrictive housing unit. DE 1-3 at 1. He filed an administrative appeal, and defendant Jeffrey Crothers, an assistant superintendent, sustained the charges but modified the restrictive housing sanction from 100 to 60 days. DE 1 ¶ 25. Jenkins then appealed in the state court system, and the Department of Corrections moved for a remand; the charges were thereafter dismissed, but not before Jenkins had already spent 60 days in the restrictive housing unit. DE 1 ¶¶ 25, 26, 43; DE 1-3 at 14.

Based on these factual allegations, Jenkins brings the following causes of action.

First, a failure-to-protect claim, under 42 U.S.C. § 1983, against defendants Hassan, Cordova, Rios, and ten John Does. DE 1 at 10. Jenkins alleges that these defendants knew Jordan

had a history of violent attacks and were deliberately indifferent to the risk he posed to other inmates, as evidenced by (1) Cordova assigning Jordan to Jenkins's cell, notwithstanding his knowledge of Jordan's violent past; and (2) Hassan and Rios refusing to separate Jordan and Jenkins after Jenkins raised safety concerns. DE 1 ¶ 19; 31, 32.

Second, a 42 U.S.C. § 1983 claim against unspecified "Mental Health Defendants." Jenkins titles this claim "failure to protect," but the substance of his claim is that unspecified healthcare providers failed to provide appropriate mental health treatment to Mr. Jordan, which increased the risk that Jordan would assault Jenkins. DE 1 ¶¶ 36–39.

Third, a § 1983 claim against Crothers, the assistant superintendent who upheld the fighting charge. DE 1 ¶¶ 42–44. Jenkins alleges that Crothers "failed to consider whether the finding of guilt . . . was based on substantial evidence," which violated his due process rights and caused him to spend 60 days in the restrictive housing unit under "atypical and significant conditions," including confinement in his cell for 23 hours a day. *Id.* ¶¶ 42–43, page 14 ¶ 3.

Jenkins seeks a declaratory judgment that the defendants failed to protect him or otherwise violated his federal constitutional rights, as well as compensatory and punitive damages. *Id.* at 14.

### B. Screening Standard

District courts must review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v.*

*Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

    **C.**    **Discussion**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted).

"Under the Due Process Clause, prison officials have a duty to 'take reasonable measures to guarantee the safety of the inmates' and 'protect prisoners from violence at the hands of other prisoners.'" *Brown v. Smith*, No. 21-3127, 2022 WL 2383609, at *1 (3d Cir. July 1, 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). However, prison officials "are not liable for every injury caused during an inmate-on-inmate assault." *Id.* Thus, "to establish a failure-to-protect claim, a prisoner must show: (1) he is 'incarcerated under conditions posing a substantial risk of serious harm' and (2) prison officials acted with 'deliberate indifference'—that is, they knew of and disregarded an excessive risk to his safety." *Salley v. Dawson*, No. 22-3764, 2023 WL 1997818, at *2 (D.N.J. Feb. 14, 2023) (quoting *Farmer*, 511 U.S. at 834, 837).

Deliberate indifference to the risk of inmate-on-inmate violence may be found "if, before an attack, the official knows an inmate faces 'an excessive risk of harm' from another prisoner but does nothing to prevent the assault." *Brown*, 2022 WL 2383609, at *1 (quoting *Bistrian v. Levi*, 696 F.3d 352, 369 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3d Cir. 2020)). Deliberate indifference may also be found "if, when an attack occurs," the official has "'a realistic and reasonable opportunity to intervene'" but "'simply refuses to do so.'" *Id.* (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

At this early stage of litigation, Jenkins has plausibly alleged a failure-to-protect claim against defendants Rios and Hassan. Being housed with an inmate who was known to have committed violent acts in the past would not, without more, necessarily be sufficient to state a

7

failure-to-protect claim. *See, e.g.*, *Bistrian*, 696 F.3d at 371 (allegation that an "inmate with a history of violence might attack another inmate for an unknown reason" was overly speculative and thus insufficient). But Jenkins's allegations against Rios and Hassan go beyond mere speculation that Jordan posed a risk. Specifically, he alleges that he had been housed next to Jordan for an extended period of time and had witnessed his disruptive behavior; that these defendants knew of Jordan's history of mental illness, drug use, physical violence, and fighting with his cellmates; that he raised concerns directly to these defendants both orally and in writing about his safety almost immediately after Jordan was placed in his cell; and that these defendants either ignored or failed to respond to his concerns, either because they were deliberately indifferent or because they were retaliating against Jenkins for having previously filed grievances. These factual allegations, accepted as true, are sufficient to state a failure-to-protect claim and will be permitted to proceed. *See, e.g.*, *Salley*, 2023 WL 1997818, at *2 (allowing failure-to-protect claim to proceed where plaintiff alleged that his cellmate had "mental health issues" and defendant correction officer "had prior knowledge conveyed to him by the attacker of the possibility of an issue" but "took no steps to report or prevent the attack"); *Mazariegos v. Monmouth Cnty. Corr. Inst.*, No. 12-5626, 2014 WL 1266659, at *6 (D.N.J. Mar. 25, 2014) (allowing failure-to-protect claim to proceed where plaintiff alleged that he had "informed [defendant] that his life was threatened by . . . gang members, but nothing was done to investigate . . . and plaintiff's pleas for help were ignored") (cleaned up); *Brown v. Warden of Cumberland Cnty. Jail*, No. 19-21965, 2020 WL 1910337, at *2 (D.N.J. Apr. 20, 2020) (allowing failure-to-protect claim to proceed where defendants were allegedly "aware of a risk to Plaintiff's safety," and "failed to take reasonable steps to prevent the harm from happening").

8

The failure-to-protect claim against Cordova, however, will be dismissed. The sole allegation against Cordova is that he assigned Jordan to Jenkins's cell notwithstanding knowledge of Jordan's violent history. But, as explained above, an allegation that an "inmate with a history of violence might attack another inmate for an unknown reason," without more, is overly speculative and thus insufficient to state a cognizable failure-to-protect claim. *Bistrian*, 696 F.3d at 371; *see also, e.g.*, *Williams v. Del. Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 475 (3d Cir. 2021) (allegation that inmate was housed "on the same block as maximum-security inmates" was "too speculative to make out a failure-to-protect claim"); *Casiano v. Russell*, No. 21-918, 2021 WL 872438, at *4 (E.D. Pa. Mar. 9, 2021) ("Being housed with inmates who committed serious crimes or who have generally exhibited violent tendencies in the past, without more, does not plausibly establish that an inmate was incarcerated under substantial risk of serious harm sufficient to state a failure to protect claim.").

The failure-to-protect claim against the unspecified "Mental Health Defendants" will also be dismissed. Jenkins's claim as to these defendants is, in essence, that if the prison's medical staff had provided better (or different) treatment to Jordan for his mental health issues, the attack on Jenkins would not have occurred. Particularly as to causation, this allegation is too speculative to establish a failure-to-protect claim. *See, e.g.*, *Luckey v. Martin*, No. 11-5649, 2012 WL 665694, at *6 (D.N.J. Feb. 29, 2012) ("speculative" failure-to-protect claims asserting "theoretical" or "hypothetical" dangers are insufficient); *Bistrian*, 696 F.3d at 371 (allegation that an "inmate with a history of violence might attack another inmate for an unknown reason" was overly speculative and thus insufficient).

The claim against Crothers will also be dismissed. Jenkins does not allege that Crothers failed to protect him, but rather that Crothers "is liable for the due process violations" of the

9

other defendants "by reason of his failure to correct them on administrative appeal." DE 1 ¶ 42. It is well established that inmates "do not have a constitutional right to prison grievance procedures," *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007); *see also, e.g.*, *Echevarria v. Strauss*, No. 22-5946, 2023 WL 1862577, at *2 (D.N.J. Feb. 9, 2023) ("there is no constitutional right to prison grievance procedures"), and that a prison official's participation in an administrative review process does not establish that official's personal involvement in the underlying constitutional violation. *See, e.g.*, *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Hill v. Churney*, No. 13-1202, 2014 WL 2605344, at *8 (W.D. Pa. June 11, 2014) ("[M]ere concurrence in an administrative appeal process is insufficient to establish personal involvement."); *Brown v. Williams*, No. 18-1906, 2018 WL 5777492, at *2 (M.D. Pa. Nov. 2, 2018) ("[A]ny attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional administrative appeal does not by itself support a constitutional due process claim.").

### D.   Conclusion

For the reasons above, Jenkins's complaint will be dismissed in part, and permitted to proceed in part, as follows:

The § 1983 claim against defendants Rios and Hassan premised on the allegation that these defendants failed to protect Jenkins from physical assault by Jordan will be permitted to proceed;

The claims against defendants Cordova, the "Mental Health Defendants," and Crothers will be DISMISSED under 28 U.S.C. § 1915(e) for failure to state a claim. Because, however,

this is an initial screening, and the Court cannot state with certainty that amendment would be futile, the dismissal of these claims is without prejudice. Jenkins may, if he chooses, file a proposed amended complaint within 60 days of the date of this order. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile). If Jenkins does not file an amended complaint, the claims against Cordova, the Mental Health Defendants, and Crothers will be dismissed with prejudice and the case will proceed as against Rios and Hassan only.

    An appropriate order follows.

Dated: May 15, 2023                                                        /s/ Kevin McNulty

                                                                       KEVIN MCNULTY
                                                                       United States District Judge